UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                            DECISION and ORDER
-vs-
                                                            11-CR-6201

JOHN BARTON,

                        Defendant.

_____

## INTRODUCTION

This case was referred by text order of the undersigned, docketed on December 13, 2011, ECF No. 2, to Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. §636(b)(1)(A)-(B). On January 13, 2012, Defendant's counsel, Robert G. Smith, Assistant Federal Public Defender, filed a motion to withdraw, ECF No. 61. On March 5, 2012, Magistrate Judge Payson delivered an oral Decision and Order, ECF No. 76, denying Mr. Smith's application to withdraw. On March 6, 2012, Mr. Smith filed a Notice of Appeal to district court as to Judge Payson's March 5, 2012 Decision and Order. Upon a consideration of the Decision and Order, and after considering Defendant's arguments, the Court finds that Judge Payson's Decision and Order denying defense counsel's motion to withdraw was neither clearly erroneous nor contrary to law. Therefore, defense counsel's motion to withdraw is denied.

1

## DISCUSSION

In his application to stay the proceedings, pending appeal to this Court of Judge Payson's denial of his motion to withdraw, Mr. Smith set forth the relevant background of this case:

> 4. Mr. Barton, along with Shawn Rickard, has been charged in a seven count superseding indictment conspiracy to manufacture 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation 21 U.S.C. § 846; unlawfully manufacturing 500 grams or more of a mixture and substance containing detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), and 18 U.S.C. § 2; knowingly possessing with intent to distribute a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)©, and 18 U.S.C. § 2; possessing a quantity of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(D), and 18 U.S.C. § 2; using and maintaining a premises for the manufacture, distribution, and use of methamphetamine, in violation 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; possessing firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. §§ 924(c)(1) & 2 (Docket Item 68). Count VII of the superseding indictment pertained only to defendant Shawn Rickard (Docket Item 68, at 6). The superseding indictment also contained a forfeiture allegation pertaining to the firearms (Docket Item 68, at 7-8). On December 13, 2011, the case was referred to United States Magistrate Judge Marian W. Payson for all pretrial matters pursuant to 28 U.S.C. §§ 636(b)(1)(A) & (b)(1)(B).
>
> 5. On July 14, 2011, then Assistant Federal Public Defender Elizabeth J. Switzer "stood in" to represent Mr. Barton. After Ms. Switzer left the Federal Public Defender's Office your Affiant assumed responsibility for Mr. Barton's case (see Docket Item 27 (Notice of Appearance)). **Your Affiant was formally appointed to represent Mr. Barton on December 7, 2011 (see Docket Item 53)**. Mr. Barton has repeatedly refused to meet and communicate with appointed counsel, forcing your Affiant to move to withdraw from representing this client (Docket Item 61).
>
> 6. At his initial appearance, **Mr. Barton informed the Magistrate Judge that he intended to retain counsel**. At subsequent appearances on July 19, 2011, August 3, 2011, August 15, 2011, Mr. Barton informed the Court that he had not yet retained counsel. On January 11, 2012, Mr. Barton made a request to the District Court that the proceedings be adjourned to allow him the opportunity to obtain his own lawyer (see Docket Item 60). The

adjournment was granted. The Court also appointed Mr. James Wolford, Esq., to assist Mr. Barton in considering his options regarding his representation (Docket Item 69). On February 13, 2012, Mr. Barton appeared before the Magistrate Judge and refused to answer any questions regarding his attempts to obtain counsel (Docket Item 73). The Magistrate Judge ordered Mr. Barton to meet with Mr. James Wolford, Esq., to discuss his options regarding representation.

7. On March 5, 2012, the Court denied your Affiant's motion to withdraw from representing Mr. Barton, and scheduled a detention hearing for March 12, 2012. A Notice of Appeal has been filed so that Defense Counsel may appeal the Magistrate Judge's order denying Defense Counsel's motion to withdraw from representing Mr. Barton.

8. Your affiant now moves the Court for an Order (see Ex. A (proposed order)) to hold the detention hearing, and all further proceedings, in abeyance pending final disposition of the appeal of the Magistrate Judge's order of March 5, 2012.

9. Defense Counsel's appeal of the Magistrate Judge's Order of March 5, 2012, is pending before this Court. This appeal pertains to whether Defense Counsel should continue to represent Mr. Barton, or whether Mr. Barton should proceed pro se. Mr. Barton has rebuffed all efforts of Defense Counsel to communicate with him. The Magistrate Judge now wishes to move forward with the detention hearing, and to have Your Affiant continue to represent Mr. Barton. To force Defense Counsel to go forward with detention hearing while the appeal of the March 5, 2012, Order is pending would violate Mr. Barton's constitutional rights and force defense counsel to violate his ethical obligations.

10. Without adequately addressing the issue, as set forth in Counsel's motion to withdraw, the Court is denying Mr. Barton his right to proceed pro se. See generally Faretta v. California, 422 U.S. 806, 820 (1975) (explaining that, "[t]he language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the amendment, shall be an aid to a willing defendant-not an organ of the State interposed between an unwilling defendant and his right to defend himself personally."). Though Mr. Barton has expressed an interest in being represented by counsel of his choosing, his actions demonstrate that he may wish to represent himself rather than be represented by court-appointed counsel (see, e.g., Docket Item 25 (pro se motion to dismiss)).

11. By ordering Defense Counsel to participate in the detention hearing when it is known that counsel has not been able to adequately prepare for the proceedings, the Court is effectively denying Mr. Barton his right to effective

legal assistance. Furthermore, Mr. Barton has a right to a single detention hearing. If Mr. Barton were to be detained following this hearing, a realistic possibility, then he would be required to establish new facts, not just newly discovered facts, to reopen the detention hearing. Thus, it is not in Mr. Barton's best interest to proceed with a lawyer who is not prepared to face a hearing that was not requested by either defense counsel, the defendant, or the government.

12. Mr. Barton's refusal to communicate with Defense Counsel also makes it impossible for Counsel to represent Mr. Barton at the Detention Hearing. Counsel is not in any position to address the issues that will arise during the hearing, such as "whether there are conditions of release that will reasonably assure the appearance" of Mr. Barton. See generally 18 U.S.C. § 3142(g) (factors to be considered). Your Affiant is unable to address Mr. Barton's history and characteristics. See id. § 3142(g)(3). While a competency report has been completed, Defense Counsel will not be able to address the report because he has not been able to discuss the finding with Mr. Barton. Mr. Barton's mental condition is a factor that must be taken into consideration. See id. § 3142(g)(3)(A).

13. Furthermore, Defense Counsel cannot advocate a position for Mr. Barton regarding potential condition of release because Counsel has an ethical problem pertaining to his representation as set forth in Rule 1.2(a) of the Rules of Professional Conduct. Addressing the scope of representation and the allocation of authority between and client and lawyer, Rule 1.2 directs that "a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Rule 1.2(a) goes on to state that, "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive jury trial and whether the client will testify." Counsel has not been able to consult with Mr. Barton as to the objectives of representation. Therefore, Defense Counsel cannot proceed before the Magistrate Judge.

Robert G. Smith's Notice of Motion Seeking an Order Staying the Detention Hearing, March 9, 2012, ECF No. 78 (emphasis added).

In determining that Judge Payson's decision to deny Mr. Smith's motion to withdraw was neither clearly erroneous or contrary to law, the Court has been guided by three cases from three different circuits. First, the Court considered *McKee v. Harris*, 649 F.2d 927, 2nd Cir. 1981). In *McKee,* the Second Circuit wrote:

4

McKee contends that in electing to represent himself with the help of a legal advisor he was "given no freedom of choice," but rather was "bowing to the inevitable." Appellant's Br. at 15-16 (quoting*931 *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 755-56 (2d Cir. 1975)). Of course, the very essence of a voluntary waiver is that it be the product of a free and meaningful choice. *Moore v. Michigan*, 355 U.S. 155, 164, 78 S.Ct. 191, 196, 2 L.Ed.2d 167 (1957); Wilks v. Israel, 627 F.2d 32, 35 (7th Cir. 1980); *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976). This does not mean, however, that a court may not, under certain circumstances, require the defendant to select from a limited set of options a course of conduct regarding his representation. "A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." *Maynard v. Meachum*, supra, 545 F.2d at 278. *See also Wilks v. Israel*, *supra*, 627 F.2d at 35; United States v. Davis, 604 F.2d 474, 483 (7th Cir. 1979); United States ex rel. Testamark v. Vincent, 496 F.2d 641, 643-44 (2d Cir. 1974), *cert. denied*, 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105 (1975); United States v. Morrissey, 461 F.2d 666, 670 (2d Cir. 1972). "That petitioner did not particularly like the choice presented to him and that he did not want to proceed *pro se* are not sufficient reasons to render the choice constitutionally offensive." *Wilks v. Israel*, *supra*, 627 F.2d at 36. The question, therefore, is whether Justice Cropper's refusal to assign new counsel which in turn forced the defendant to select from among the unwanted options placed McKee in a "dilemma of constitutional magnitude," *Maynard v. Meachum*, supra, 545 F.2d at 278, that would justify granting the requested writ.

***

The grounds that McKee raised for substitution of counsel were that Occhetti had "prejudged" him and informed him that his chances of acquittal were slim. In addition, McKee suggests that Occhetti actually discussed with the prosecutor the fact of McKee's guilt.[FN7] McKee argues that, regardless of whether these allegations are true, the resulting loss of trust wrought a "fundamental disruption of the integrity of the attorney-client relationship." Appellant's Br. at 8. Thus, the argument goes, there was a "complete breakdown in communication" which warranted the eleventh-hour substitution, despite the potential for delay and disruption of the ongoing trial. We find these contentions to be meritless.

***

Since good cause did not exist for assignment of new counsel, Justice Cropper's presentation of options to McKee did not render the latter's choice involuntary. The failure to inquire into the reasons for McKee's

5

dissatisfaction, although improper, was harmless error. Inasmuch as McKee's waiver of his right to counsel was knowing, intelligent, and voluntary, Judge Sweet did not err in refusing to grant the writ.

*McKee v. Harris*, 649 F.2d at 930 -934

Second, the Court considered *United States v. Garey,* 540 F.3d 1253(11th Cir. 2008). There the Eleventh Circuit explained:

> Under the Sixth Amendment of the United States Constitution, all criminal defendants are entitled to the assistance of counsel. U.S. Const. amend. VI; *Foster v. Illinois,* 332 U.S. 134, 136-37, 67 S.Ct. 1716, 1718, 91 L.Ed. 1955 (1947); *Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022-23, 82 L.Ed. 1461 (1938). This fundamental Constitutional right attaches at the time adversarial criminal proceedings are initiated, see *Rothgery v. Gillespie County*, ---U.S. ----, 128 S.Ct. 2578, 2593, 177 L.Ed.2d 366 (2008), and continues through completion of a first, non-frivolous direct appeal, see *Smith v. Robbins*, 528 U.S. 259, 278, 120 S.Ct. 746, 760, 145 L.Ed.2d 756 (2000). The right to counsel is a fundamental part of the adversary system of criminal justice and recognizes "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty...." *Johnson*, 304 U.S. at 462-63, 58 S.Ct. at 1022.
>
> Nevertheless, the right to counsel is intended as a tool, not a tether. "[I]t is one thing to hold that every defendant ... has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want." *Faretta*, 422 U.S. at 833, 95 S.Ct. at 2540. For that reason, it has long been established that a criminal defendant may waive the right to counsel when he does so intentionally and knowingly. *See, e.g., Johnson*, 304 U.S. at 464, 58 S.Ct. at 1023.
>
> Less clear are the means by which a defendant may waive his right to counsel. In *Faretta,* the Supreme Court recognized the right to self-representation in the context of deciding whether a defendant who had asked to represent himself and had demonstrated a rudimentary knowledge of legal procedure was entitled to proceed pro se. In determining he was, the Court noted, "The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the [Sixth] Amendment, [wi]ll be an aid to a willing defendant-not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Faretta*, 422 U.S. at 820, 95 S.Ct. at 2533. Faretta's recognition of the right to self-representation was grounded in respect for a defendant's

free choice. "The right to defend is personal," for it is "[t]he defendant, and not his lawyer or the State, [who] will bear the personal consequences of a conviction." *Id.* at 834, 95 S.Ct. at 2540-41.

It is important to remember that *Faretta's* discussion of the right to self-representation presupposed a cooperative defendant willing to engage in reciprocal dialogue with the court. The Supreme Court has never confronted a case in which an uncooperative defendant has refused to accept appointed counsel or engage in a colloquy with the court. Consequently, the Court has never been asked to determine whether a defendant may waive counsel without making an explicit, unqualified request to represent himself.

***

Although the Sixth Amendment guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice. An indigent criminal defendant "does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir.1985). Good cause in this context means a fundamental problem, "such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973).FN3 In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves.

Nevertheless, it is not uncommon for defendants to demand what they cannot have: substitute counsel. When confronted with defendants who, by their words and conduct, reject both appointed counsel and self-representation, several of our fellow circuits have concluded that a litigant may waive his right to court-appointed counsel not only by expressly invoking the right to self-representation, but also by engaging in conduct that evinces a knowing desire to reject the counsel to which he is entitled. *See King v. Bobby*, 433 F.3d 483, 492 (6th Cir. 2006); *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir.2005); *United States v. Oreye*, 263 F.3d 669, 670-71 (7th Cir.2001); *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir.1981). But see *Fischetti v. Johnson*, 384 F.3d 140, 146 (3d Cir. 2004) (suggesting only dilatory behavior or other misconduct might justify waiver by conduct). These courts hold that a defendant who rejects appointed counsel but refuses to cooperate with the court by affirmatively expressing his desire to proceed pro se, effectively chooses self-representation by rejecting the only other choice to which he is constitutionally entitled. The reasoning behind this approach is simple:

7

The question of waiver is one of inference from the facts. As a matter both of logic and of common sense ... if a person is offered a choice between three things and says "no" to the first and the second, he's chosen the third even if he stands mute when asked whether the third is indeed his choice.

*Oreye*, 263 F.3d at 670-71.

In the past, we have treated the express, affirmative request for self-representation discussed in Faretta as the exclusive means by which a defendant may waive the right to counsel.FN4 Recognizing any waiver of counsel will result in self-representation and anxious to prevent unintentional waiver of the protections afforded by the right to counsel, we have suggested anything less than a "clear and unequivocal" written or oral invocation of the right to self-representation is insufficient to invoke the right to self-representation, regardless of context. See, e.g., *Marshall v. Dugger*, 925 F.2d 374, 377 (11th Cir.1991) ("It is necessary ... that the defendant clearly and affirmatively express a desire to represent himself in the proceedings."); *Stano,* 921 F.2d at 1143 ("[T]he right to self-representation must be manifested to the trial court by an oral or written request in order to be recognized and to trigger the requisite examination by the court.").

\*\*\*

Today we recognize it is possible for a valid waiver of counsel to occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers.FN5 Without diminishing in any way our concern that district courts protect defendants from unwittingly waiving fundamental Constitutional rights, we conclude our prior precedents fail to recognize a defendant may intentionally and voluntarily waive his right to counsel and accept the consequent necessity of self-representation in more than one way. As the Second Circuit has aptly noted:

> [T]he very essence of a voluntary waiver is that it be the product of a free and meaningful choice. This does not mean, however, that a court may not, under certain circumstances, require the defendant to select from a limited set of options a course of conduct regarding his representation. A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive.

*McKee*, 649 F.2d at 931 (citations and quotations omitted).

When a defendant rejects his court-appointed counsel or otherwise engages in behavior that creates tension between his right to counsel and his right to self-representation, a district court does not compromise the defendant's free choice by presenting him with accurate information regarding his lawful choices and asking him to choose between them. And, when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with knowledge of his options and the consequences of his choice.FN6

In recognizing that a defendant may waive counsel by his uncooperative conduct as well as by his express request, we do not suggest that district courts are bound to interpret the uncooperative behavior of every defendant as a waiver of the right to counsel. Nor do we suggest a district court would err by requiring any particular defendant to make a clear statement of his intention to proceed pro se before agreeing to dismiss appointed counsel. In any given case, the proper course of action will turn on factors the district court is best positioned to assess. What we recognize today is that, in some instances, a defendant's conduct will reveal a voluntary decision to choose the path of self-representation over the continued assistance of counsel. In such cases, the district court may, in its discretion, conclude the defendant has voluntarily waived his right to counsel.

In order for a defendant to validly waive his right to counsel, his choice must be knowing, as well as voluntary. "Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.' " *Iowa v. Tovar*, 541 U.S. 77, 81, 124 S.Ct. 1379, 1383, 158 L.Ed.2d 209 (2004) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). Whether a defendant has waived his rights knowingly depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson*, 304 U.S. at 464, 58 S.Ct. at 1023. Put another way:

To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323,

This Court has held the "ideal method of assuring that a defendant understands the consequences of a waiver is for the trial court to conduct a pretrial hearing" at which the "district court should inform the defendant of the nature of the charges against him, possible punishments, basic trial

9

procedure and the hazards of representing himself." *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002) (quotations omitted). We have emphasized the trial judge's duty to engage the defendant in a colloquy to elicit information regarding the defendant's background, understanding of the charges against him, and knowledge of courtroom rules and procedures, and we have warned that "[t]he closer to trial an accused's waiver of the right to counsel is, 'the more rigorous, searching and formal the questioning of the trial judge should be.' " FN7 *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir.1995) (quoting *Strozier v. Newsome*, 926 F.2d 1100, 1105 (11th Cir.1991)); see also *Stano,* 921 F.2d at 1148.

We continue to stress that when a right as fundamental as the right to counsel is at stake, it is important for trial courts to do all in their power to ensure every defendant, from the most cooperative to the most obstreperous, is informed of the risks of proceeding pro se and is prevented from waiving counsel without sufficient knowledge of the protections he is surrendering. Before a court concludes a defendant has knowingly waived his right to counsel, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541 (quotations omitted). To that end, the best practice is for district courts to begin by attempting to engage the defendant in a full discussion of the dangers of self-representation whenever a defendant expresses a desire to waive his right to counsel, whether affirmatively or by his conduct.

Nevertheless, an unwilling defendant can foil a district court's best efforts to engage in dialogue, thereby preventing the court from eliciting clear information regarding the defendant's understanding of the dangers of proceeding pro se. A dialogue cannot be forced; therefore, when confronted with a defendant who has voluntarily waived counsel by his conduct and who refuses to provide clear answers to questions regarding his Sixth Amendment rights, it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted and to provide him with a general sense of the challenges he is likely to confront as a pro se litigant. So long as the trial court is assured the defendant (1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled, the court may, in the exercise of its discretion, discharge counsel or (preferably, as occurred here) provide for counsel to remain in a standby capacity.FN9 In such cases, a *Faretta*-like monologue will suffice.

*United States v. Garey,* 540 F.3d at1258 -1268.

Finally, the Court considered *Fischetti v. Johnson*, 384 F.3d 140, 145 -147 (3rd Cir.

2004). In this case, the Third Circuit held:

> A defendant's right to counsel is not without limit and cannot be the justification for inordinate delay or manipulation of the appointment system. *United States v. McFadden*, 630 F.2d 963, 972 (3d Cir.1980). There is ample precedent for the proposition that the need for an orderly and expeditious trial may require that a defendant proceed with counsel not of his preference. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Morris v. Slappy*, 461 U.S. 1, 12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *Fuller v. Diesslin,* 868 F.2d 604, 607 (1989). Faced with this situation, therefore, we have previously held that if the court has "made the appropriate inquiries and has determined that a continuance for substitution of counsel is not warranted, the court can then properly insist that the defendant choose between representation by his existing counsel and proceeding pro se." *United States v. Welty*, 674 F.2d 185, 188 (3d Cir.1982). For these reasons, the trial judge properly rejected Fischetti's demand for another appointment of counsel.
>
> The problem lies with what happened next. Fischetti refused to choose either to proceed with current counsel or to proceed alone. Had the judge at that point instructed Fischetti to proceed with current counsel, that decision would be wholly supportable under *Morris*. See *also Wheat,* 486 U.S. at 164, 108 S.Ct. 1692. But, instead, the trial judge reacted to Fischetti's resistance by ordering him to trial *pro se.*
>
> Was Fischetti's response a truly voluntary waiver of counsel? The law in this Circuit indicates that it was not. In *United States v. Welty*, a defendant was denied new counsel and affirmatively chose to represent himself. 674 F.2d at 187. We reversed the conviction because the defendant was not adequately apprised of the consequences of self-representation, and thus his waiver of the right to counsel was not valid. *Id*. at 194. If it is improper to have a defendant proceed alone when there is a flawed waiver, it follows that it is improper to have him do so when he has not voluntarily waived at all.
>
> The threshold question in determining whether a defendant can proceed pro se is whether he wants to do so. Only after he has "clearly and unambiguously" asserted the right to self-representation does the court move to the next question-whether the choice is " 'intelligent and competent.' " *United States v. Stubbs*, 281 F.3d 109, 118 (3d Cir. 2002) (quoting *Buhl v. Cooksey*, 233 F.3d 783, 799 (3d Cir. 2000)). For this reason, the State's vigorous contention that the trial judge reasonably determined that Fischetti's "waiver" was knowing is beside the point. In this case, the trial judge's ruling facially acknowledges that Fischetti rejected-rather than asserted-the desire to represent himself. Thus, there was no voluntary waiver in the first place.

11

Was there another basis, then, to deny Fischetti counsel? To be sure, there are occasions when a defendant can be forced to go to trial without an attorney-when a defendant has forfeited his right to counsel or impliedly "waived it by conduct." In *United States v. Goldberg*, 67 F.3d 1092 (3d Cir.1995), we explained that a defendant could lose the right to counsel by physically assaulting his attorney or (in the case of a financially able defendant) refusing to retain any counsel in the first place. We apply this rule of forfeiture not to punish defendants but to preserve the ability of courts to conduct trials. Similarly, under *Goldberg*, even less serious dilatory behavior, if preceded by an explicit warning, can be treated as an implied waiver of counsel by misconduct. *Id*. at 1100. Both forfeiture and implied waiver are conceptually distinct from actual waiver. *Id*. at 1099-1101.

The circumstances here, however, did not meet the standards necessary to establish that Fischetti actually forfeited the right to an attorney or waived his attorney by misconduct. There is no evidence that Fischetti assaulted his current attorney, or made it impossible for any counsel to appear, or even that the attorney wished to be relieved. Since there was an attorney in place, there was no cost to the trial court in simply ordering that he continue. Accordingly, there was no necessity to mandate that Fischetti forfeit his attorney. By the same token, there is no record that the trial court formally warned Fischetti that his refusal to proceed with his appointed counsel would result in losing counsel altogether. Moreover, Fischetti's failure to choose between counsel and pro se representation does not seem to be "conduct" of the sort that impliedly waived his attorney. To the contrary, this "conduct" was literally ambivalent between the two choices. Thus, implied waiver is simply inapposite.

Where, as here, there was no harm or delay to the judicial process in having Fischetti's court-appointed counsel continue representation, forfeiture was not appropriate under our precedent. And where the defendant chooses neither attorney representation nor self-representation, the default position for the court should be to mandate attorney representation. After all, while there are competing fundamental rights to counsel and to self-representation, "it is representation by counsel that is the standard, not the exception." *Martinez v. Court of Appeal,* 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

We emphasize that our ruling does not mean that a trial judge is powerless in the face of a difficult defendant who wants neither to proceed with current counsel nor to continue on his own. If the appointment of new counsel is not warranted, it can be denied. If a defendant refuses to proceed with counsel and also refuses to proceed pro se, the proper course is to move forward with existing counsel. This approach preserves the right to counsel-which is

the presumptive default position-while allowing the court to manage the case.

Turning now to this case and Mr. Barton, he has never expressed any animosity or even dissatisfaction with Mr. Smith. In that regard, therefore, this matter is distinguishable from the *McKee and Garvey* decisions . Here, as indicated above, we have only Mr. Barton's indication to Judge Payson at his initial court appearance that he intended to retain counsel, which he reiterated in his appearance before this Court on January 11, 2012, ECF No. 60. See transcript, ECF No. 67, page 5, lines 2-5; pages 28, line 24 to page 29, line 2. He has never expressed any desire to represent himself. However, by his non-responsiveness, he has thwarted each attempt by this Court to engage him in some colloquy on the issue of representation.[1] At a court appearance on March 12, 2012, he replied as follows to very question the Court put to him, "My John Anthony Barton Verified Motion to Dismiss for Lack of Jurisdiction 1000 is all I have to say. Thank you." This is virtually the same response he has given to Judge Payson to any questions she asked him.[2] While one might question Mr. Barton's competency, that issue has already been put to rest by the Report and Recommendation of Judge Payson, December 8, 2011, ECF No 51, recommending that he be found competent to stand trial, which this Court adopted, without objection, in its January 12, 2012 Decision and Order,

---

[1]At a court appearance on January 11, 2012, ECF, No. 60, this Court explained to the defendant the pitfalls of self-representation. See transcript, ECF No. 67, page 5, line 34 to page 9, line 2. Judge Payson advised the defendant likewise at a court appearance on March 5, 2012, ECF No. 76.

[2]It should also be noted that this Court also issued a Decision and Order, ECF No.63 in which it adopted without objection Judge Payson Report and Recommendation, ECF No. 52, recommending that Mr. Barton's *pro se* to dismiss the criminal complaint motion, ECF No. 25 for lack of personal and subject matter jurisdiction.

ECF No. 62.[3]

Having considered all the applicable facts and circumstances of this case, the Court believes, as the Third Circuit did in *Fischetti v. Johnson*, *supra* that, although there are competing fundamental tights to representation by counsel and to self-representation, it is representation by counsel that should be the standard, not the exception.

---

[3]The defendant is apparently a member of the Sovereign Citizen movement. As to the Sovereign Citizens, the Federal Court of Claims observed:

> Plaintiff's complaint and the attached materials reflect that plaintiff adheres to the belief that even though he was born and resides in the United States, he is his own sovereign and is therefore not a United States citizen. This belief is the hallmark of the sovereign citizen movement.FN1 So-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings. *See, e.g.*, *Brown v. United States*, 105 F.3d 621 (Fed.Cir.1997) (describing an attempt to avoid payment of federal income taxes); *United States v. Schneider*, 910 F.2d 1569 (7th Cir.1990) (describing an attempt to present a defense in a criminal trial); *Bryant v. Wash. Mut. Bank*, 524 F.Supp.2d 753 (W.D.Va. 2007) (describing an attempt to satisfy a mortgage).
>
> FN1. The beliefs and tactics of the sovereign citizen movement have been described by various government and nongovernmental agencies. See generally The Sovereign Citizen Movement, Fed. Bureau of Investigation, http:// www. fbi. gov/ news/ stories/ 2010/ april/ sovereign citizens_ 041310 (last visited Sept. 22, 2011); Sovereign Citizen Movement—Extremism in America, Anti–Defamation League, http:// www. adl. org/ learn/ ext_ us/ SCM. asp? xpicked= 4 (last visited Sept. 22, 2011); Sovereign Citizens Movement, Southern Poverty Law Center, http:// www. splcenter. org/ get- informed/ intelligence- files/ ideology/ sovereign- citizens- movement (last visited Sept. 22, 2011).

The goal of some sovereign citizens is the recovery of money from the United States that they actually—in the form of taxes—or purportedly paid to the government. *See, e.g., Ambort v. United States*, 392 F.3d 1138 (10th Cir. 2004) (describing attempts to obtain a refund of federal income taxes); *Troxelle v. United States*, No. 10–312C, 2010 WL 3982349 (Fed.Cl. Oct. 6, 2010) (unpublished opinion) (describing the plaintiff's allegations that the issuance of his birth certificate and social security number created debts that the government was required to repay to him). *Gravatt v. United States*, 100 Fed.Cl. 279, 282 -283 (Fed.Cl., 2011)

**CONCLUSION**

Accordingly, the application of Robert G. Smith, Assistant Federal Public Defender, to withdraw as Mr. Barton's counsel, ECF No. 61, is denied.

IT IS SO ORDERED.

Dated: Rochester, New York
March 16, 2012

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge